# UNITED STATES DISTRICT COURT
for the
District of Massachusetts

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| | ) | Case No. |
| | ) | 18-mj-1132-DLC |
| Quantae Elmore | ) | |
| | ) | |
| | ) | |

*Defendant(s)*

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __May 4, 2018__ in the county of __Suffolk__ in the _____ District of __Massachusetts__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 USC §922(g)(1) | Felon in Possesion of a firearm and ammunition |

This criminal complaint is based on these facts:

See attached affidavit

☑ Continued on the attached sheet.

*Complainant's signature*

Michael Romeo, Special Agent, ATF
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 06/21/2018

*Judge's signature*

City and state: Boston, MA    Hon. Donald L. Cabell, U.S.M.J.
*Printed name and title*

## AFFIDAVIT

I, Michael Romeo, having been duly sworn, on oath depose and state that:

1.   I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms & Explosives ("ATF"), and have been so employed since 2015.  In that capacity, I investigate violations of the federal firearms statutes and have participated in many investigations relating to the unlawful possession of firearms and ammunition.

2.   Based on my training and experience, I am aware that Title 18, United States Code, Section 922(g)(1) makes it a federal offense for any individual who has previously been convicted of a felony offense to possess a firearm or ammunition in or affecting interstate commerce.  Having so stated, I make this affidavit in support of a criminal complaint charging **QUANTAE ELMORE** with being a felon in possession of a firearm and ammunition in violation of that statute.

3.   The statements contained in this affidavit are based on my own investigation, work done by other ATF Agents, and on information provided to me by officers of the Boston Police Department ("BPD").  This affidavit is submitted for the limited purpose of establishing probable cause to believe **ELMORE** violated 18 U.S.C. §922(g)(1), and therefore does not set forth

all of the information that I and other law enforcement personnel have obtained during the course of this investigation.

4. Shortly before 10 p.m. on May 4, 2018, Officers D'Addieco, Lopez, Ramos, and Lopes from BPD's Youth Violence Strike Force (collectively, "the Officers") were on patrol in Orchard Gardens Housing Development in Roxbury's Dudley Square. The Officers were driving an unmarked Crown Victoria readily identifiable on the street as a police vehicle. Although dressed in plain clothes, each also wore his Boston Police Department Badge on the outside of his clothing.

5. The Officers went to this area in response to a recent peak in violence and an ongoing feud between the Orchard Park and Heath Street Gangs. In particular, the officers were aware that, approximately 20 minutes earlier, multiple persons had been shot at 277 Centre Street inside the Mildred C. Haley Apartment Complex (formerly known as the Bromley Heath Housing Development) in Jamaica Plain. The officers were also advised that a small white motor vehicle occupied by an unknown black male had been seen speeding away from the area of the shooting. The officers had therefore come to the Orchard Gardens Development to investigate possible links between the Jamaica Plain shooting and Orchard Gardens.

6. While traveling on Ziegler Street in the direction of Winslow Street inside the Orchard Gardens Development, the

officers noted a white Scion bearing MA Reg. 8MVV30 that had a number of males who the Officers recognized and believed to be members of the Orchard Park Gang or Vine/Forest Street Gang (an ally of Orchard Park from the same general area in Dudley Square). The Officers noted that, as they passed the Scion, the group's attention was immediately focused on them and that two males identified as GEOVONNIE MITCHELL and ALEX SLAUGHTER were walking towards the car.

7. The officers drove past the group and then circled the block to investigate further. As they approached the Scion for a second time, they noted that the engine was running and that MITCHELL was now sitting in the driver's seat and that SLAUGHTER and **ELMORE** were standing next to the car.

8. As the officers got closer to **ELMORE** (who they knew from prior encounters on the street, knew to be an identified member of the Vine/Forest Street gang, and knew to have a prior firearm arrest), they noted that he was staring at them with an alarmed look on his face. Others were also in the area.

9. The officers parked their unmarked cruiser and approached the group. As they did so, members of it began to disperse, many walking in the direction of the officers. The officers' attention was directed at **ELMORE**, who separated himself from the rest of the group as he walked away from the Officers in the direction of 93 Ziegler Street. Before he began

walking away, the Officers noted that **ELMORE** stared at them, grabbed the front of his waistband with both hands, and then began walking away from the officers while continually looking over his shoulders at the officers while appearing to make additional adjustments to the front waist area with both hands.

10. Officers Ramos and D'Addieco (who had received training in the Characteristics of an Armed Gunman and believed **ELMORE**'s actions to be consistent with someone attempting to secure a weapon carried in his waistband) followed **ELMORE**, who quickened his pace while continuing to look over his shoulder to see where the officers were and what they were doing.[1]

11. Recognizing that he was not going to be able to just walk away, **ELMORE** stopped next to a parked truck, turned and faced Ramos and D'Addieco, grabbing his front waistband again with both hands and looking at it and then the officers. As Ramos and D'Addieco got closer to **ELMORE**, he continued to grab his waist, where Ramos saw a bulge consistent with a firearm.

12. Based on all the surrounding circumstances, Ramos moved in to conduct a pat frisk of **ELMORE**, who continued to keep his hands in his waist area. Ramos first felt, and then recognized the outline of a firearm in **ELMORE**'s front waistband

---

[1] Officer Ramos called out to **ELMORE** as he started to walk away, telling him that he (Ramos) wanted to speak with him.  **Elmore** ignored the request.

and immediately alerted his fellow officers to the presence of a gun and took **ELMORE** to the ground.  As Officer D'Addieco attempted to secure **ELMORE** and recover the gun, a group of males believed to be members of Orchard Gardens or VNF surrounded the officers and began yelling and cursing at them.  Ultimately, the officers (who were forced to call for back up to assist with crowd control) were able to secure **ELMORE** and remove the firearm from the area of his waistband.

    13.   The firearm recovered from **ELMORE**'s waistband was Smith & Wesson Model 38 SPL that bore serial number R127709 and contained 5 rounds of .38 caliber ammunition.

    14.   After the firearm and the 5 rounds of ammunition recovered from it had been processed and placed into evidence, the firearm successfully test fired, and the rounds it contained certified to be ammunition by the BPD's Ballistics Unit, the firearm and ammunition was examined by ATF S/A Mattheu Kelsch, who is trained to perform interstate commerce nexus examinations.  S/A Kelsch examined the firearm and the 5 rounds of ammunition it contained when seized, determined they were a "firearm" and "ammunition" for purposes of federal law, and determined that all of the ammunition had been manufactured outside Massachusetts, meaning that the 5 rounds had traveled across state lines or international boundaries prior to being seized in Boston on May 4, 2016.  The trace of the firearm

revealed that although the gun had been manufactured by Smith & Wesson in Springfield, MA, it was thereafter sold to a Federal Firearm Licensee in White River Vermont.

15. I have reviewed **ELMORE**'s criminal record as maintained by the Massachusetts Criminal History Systems Board. It reveals, among other things, that **ELMORE** was convicted in 2012 in Norfolk Superior Court on charges of Unarmed Robbery and Witness Intimidation. Based on my training and experience, I know that these are crimes punishable under Massachusetts law by imprisonment for more than one year.

16. Based on the foregoing, I submit that there is probable cause to believe that, on or about May 4, 2018, **QUANTAE ELMORE,** having been previously convicted of a crime punishable by a term of imprisonment exceeding one year, did possess, in and affecting commerce, a firearm and ammunition in violation of Title 18, United States Code, Section 922 (g)(1).

MICHAEL ROMEO
Special Agent, ATF

Sworn and subscribed to before me this 21 day of June, 2018.

DONALD J. CABELL
U.S. MAGISTRATE JUDGE
DISTRICT OF MASSACHUSETTS